**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CROW FAMILY, INC., CROW HOLDINGS CAPITAL PARTNERS, LLC; ANATOLE PARTNERS III, LLC; and WINDSOR COURT HOTEL PARTNERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIED WORLD ASSURANCE COMPANY, LTD., BRIT CASUALTY COMPANY; ILLINOIS UNION INSURANCE COMPANY; and LLOYD'S UNDERWRITERS – BRIT,<br><br>Defendants. | Case No. 3:24-cv-02490-B |

# REPLY BRIEF IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S MOTION TO DISMISS

**O'MELVENY & MYERS LLP**

Kristin C. Cope
State Bar No. 24074072
kcope@omm.com
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201-2692
Telephone: +1 972 360 1900
Facsimile: +1 972 360 1901

*Attorney for Defendant Illinois Union Insurance Company*

## INTRODUCTION

Plaintiffs' combined Response to Defendants' Motions to Dismiss asserts that "IUIC does not seriously dispute coverage" (Resp. at 5), but IUIC's Motion to Dismiss ("Motion") provides at least four (4) independent reasons why there is no coverage in this case, most of which the Response fails to address. Most glaringly, the Response asserts that except in minor details, the language in the policies for each Defendant "is identical"—completely glossing over the key difference in IUIC's Policy: the key provision Plaintiffs rely upon is expressly deleted.

On closer inspection, the Response concedes many of IUIC's arguments: that endorsements (like the "General Amendatory Endorsement") trump general policy language (Resp. at 6); that Plaintiffs cannot meet the "direct physical loss, damage or destruction" requirement (Resp. at 13 n.11); and that "Covid-19 [is] a virus" (Resp. at 19)—each of which independently defeats their claims. Lacking a legitimate response, Plaintiffs pivot to new theories to manufacture ambiguity in the Policy, such as arguing pre-existing declaration language should defeat a later endorsement's explicit language, or criticizing Defendants for discussing other Policy provisions. Plaintiffs also maintain that no exclusion bars coverage by taking inconsistent positions about COVID-19 and whether it can be properly considered a "virus."

Plaintiffs' arguments contradict both clear precedent and the plain language of the Policy. Indeed, Plaintiffs' cherry-picked, piecemeal approach cannot be squared with basic principles of contract interpretation, much less the Policy itself. In contrast to Plaintiffs' ever-changing strategy, IUIC's position is clear: the "Special Time Element" was deleted; the Policy required "direct physical loss, damage or destruction" to invoke coverage (which Plaintiffs cannot prove); and several exclusions preclude coverage. Accordingly, Plaintiffs' arguments must be rejected and their claims against IUIC dismissed in their entirety.

## ARGUMENT

### I. Plaintiffs Acknowledge the "Special Time Element" Coverage Was Deleted.

As explained in IUIC's Motion, the "General Amendatory Endorsement" ("GAE"), unique to IUIC's Policy, expressly deleted the entire "Special Time Element" ("STE") provision in the form Policy. Mot. at 10-12. This fact alone warrants dismissal as to IUIC—without the "Special Time Element," Plaintiffs cannot prevail on any claims because this provision forms the basis of all of Plaintiffs' coverage theories. *See* Resp. at 13-14.

Plaintiffs concede (as they must) the existence of the GAE and specifically plead that *its terms control* other aspects of coverage. *See id.* at 9 & n.9.[1] Plaintiffs also concede that endorsements generally trump policy language under clear Texas law. *See id.* at 6-7 (citing caselaw)). But Plaintiffs attempt to avoid the GAE's impact through yet another convoluted argument: they assert (without authority) that content in the Declarations is not "the main policy contract," and that because the Declarations section of the Policy lists a "specific 'share' of Special Time Element coverage . . . this *endorsement*—which is more specific and tailored to Crow—must trump over the conflicting, and unmentioned, [GAE] endorsement." *Id.* at 7 (emphasis added).[2] This argument suffers from at least two fatal flaws.

***First***, Plaintiffs cite no authority for the idea that the Declarations are separate from, and not simply part of, "the main policy" that can be superseded by endorsement. Indeed, the "Declarations" Plaintiffs point to are simply Section I in the Table of Contents within the "Property Insurance Policy." App. 008 (Policy at 2). ***Second***, the portion of the Declaration section cited by

[1] Plaintiffs' Response notes that "the IUIC Policy reduces [the radius in the Civil and Military Authority provision] to five miles"—citing to the GAE. (Resp. at 9 n.9)—and thus implicitly concedes that the GAE is fully part of "the IUIC Policy." This is consistent with their Petition. *See* Pet. ¶¶ 30, 46.

[2] Plaintiffs also make much of the fact that the GAE is "unmentioned" on a specific "Declarations" page (Resp. at 7), which is irrelevant because it is expressly included at the outset of the Policy in the Forms Schedule (App. 006), and Plaintiffs already concede it is part of the Policy (*see* Pet. ¶¶ 30, 46).

Plaintiffs is not an endorsement, much less an endorsement that could "trump" the GAE. *See id.* at 7. ***Third***, numerous cases have held that "an endorsement . . . will ***supersede*** the previous policy terms to the extent they are truly in conflict"—not merely because they are more specific. *See, e.g.*, *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558–59 (5th Cir. 2004) (applying Texas law) (emphasis added).[3] In other words, Texas law contemplates a "conflict" between a policy and an endorsement and holds that an endorsement will prevail. *See, e.g.*, *TIG Ins. Co. v. N. Am. Van Lines, Inc.*, 170 S.W.3d 264, 270–71 (Tex. App.—Dallas 2005, no pet.) ("An insurance policy and its endorsements should be construed together unless they are so much in conflict they cannot be reconciled. . . . In that case, endorsements to a policy generally supersede and control over conflicting printed terms within the main policy."); *see also Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. 509/QF037603 v. LM Ericsson Telefon, AB*, 272 S.W.3d 691, 696 (Tex. App.—Dallas 2008, pet. denied) (describing "the declarations page" as part of the policy).[4]

The *Bituminous* case from this District is instructive. *See Bituminous Cas. Corp. v. Travelers Indem. Co.*, No. 3:12-CV-0935-D, 2013 WL 1722447 (N.D. Tex. Apr. 22, 2013), *aff'd*,

[3] *See also Mesa Operating Co. v. Cali. Union Ins. Co.*, 986 S.W.2d 749, 753–54 (Tex. App.—Dallas 1999, pet. denied) ("Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy."); *U.S. Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 781 S.W.2d 394, 399 (Tex. App.—Houston [1st Dist.] 1989, no writ) ("An endorsement to a policy prevails over inconsistent printed provisions of the policy."); *Mut. Life Ins. Co. of N.Y. v. Daddy$ Money, Inc.*, 646 S.W.2d 255, 259 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ("We agree that the law is clear that an endorsement to a policy generally supersedes and controls conflicting printed terms within the policy.").

[4] Plaintiffs cite *Levine v. Emps. Ins. Co. of Wausau*, 887 F.3d 623 (4th Cir. 2018) and *Davis v. Tex. Life Ins. Co.*, 426 S.W.2d 260 (Tex. App.—Waco 1968, writ ref'd n.r.e.) to support their argument that the "specific 'share' of Special Time Element coverage" should "trump" the GAE. *See* Resp. at 7. Neither case supports their argument. In *Levine*—an out-of-circuit case, applying Virginia law—the court held specific limitations in the policy's declarations pages controlled over a more general definition in an endorsement that was mandated by a state regulatory agency. *See* 887 F.3d at 630, 631. But that is not the case here—the cited Declaration provision and the GAE do not concern a more specific application of what is in the endorsement (e.g., the Declaration does not further specify the precise extent to which the "Special Time Element" is deleted). Here, the body of the Policy provides the "Special Time Element" coverage; the Declarations section limits that coverage; and the GAE deleted that coverage in its entirety, which controls. And *Davis* did not involve an endorsement at all.

564 F. App'x 132 (5th Cir. 2014). There, a policyholder sued an insurer seeking a declaratory judgment that their policy covered a leased tractor and trailer, involved in an accident giving rise to an underlying lawsuit. *Id.* at *1. However, the insurer had issued an endorsement, which, *inter alia*, specified that "LIABILITY COVERAGE IS DELETED" for five tractors and five trailers, including the property at issue. *Id.* The court held "the Endorsement unambiguously deleted liability coverage for listed tractors and trailers, and thus the tractor and trailer involved in the accident were not covered autos." *Id.* at 5. In doing so, the court rejected plaintiff's argument that "the failure to specifically amend" language ***in the Policy's Declaration*** and Business Auto Coverage Form "create[d] an ambiguity," noting: "Even if not consistent, the Endorsement's explicit deletion of liability coverage conflicts with [the] definition [in the Business Auto Coverage Form, referred to in the Declaration], and thus would supersede it." *Id.* at 5 & n.6.

Texas black-letter law is clear: the GAE is a controlling endorsement which expressly deletes the coverage on which Plaintiffs' claims are based; as such, there is no coverage under the IUIC Policy and all claims against IUIC must be dismissed.

**II. Plaintiffs Fail to Show Why the SARS Exclusion Does Not Bar Coverage.**

Even if the "Special Time Element" was not deleted, the SARS exclusion contained therein would bar coverage because (as described in IUIC's Motion) COVID-19 is caused by SARS—specifically, SARS-CoV-2. *See, e.g.*, *NTT DATA Int'l LLC v. Zurich Am. Ins. Co.*, No. 3:21-CV-890-S, 2022 WL 196533, at *7 (N.D. Tex. Jan. 21, 2022). In an attempt to distinguish SARS from COVID-19, Plaintiffs maintain, "While both SARS and Covid-19 are both caused by a class of viruses known as 'coronaviruses,' SARS and Covid-19 are distinct diseases (not viruses)." Resp. at 8. Plaintiffs' argument fails for multiple reasons.

***First***, Plaintiffs' Response reveals they do not even believe their own argument. In its discussion of the SARS exclusion, the Response takes the position that COVID-19 is a "disease,"

not a virus, to distinguish it from SARS. Resp. at 8-9. But later, when discussing the "Pollution, Contamination" exclusion (discussed below), Plaintiffs concede the opposite: "***Covid-19, a virus***, is not a thing that is used for making or doing . . . ." Resp. at 19 (emphasis added). This is yet another example of Plaintiffs cherry-picking their arguments to fit their preferred interpretation.

***Second***, the distinction Plaintiffs seek to raise (excluding a SARS "disease" but not a SARS "virus") is not found anywhere in the Policy. Plaintiffs cannot inject terminology and cite to extrinsic evidence to create ambiguity. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) ("Our analysis of the policy is confined within the four corners of the policy itself."); *see also Shafaii Child.'s Tr. & Party & Reception Ctr., Inc. v. W. Am. Ins. Co.*, 417 S.W.3d 614, 621 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("Extrinsic evidence is not admissible for the purpose of creating an ambiguity in an insurance policy." (citing *Progressive Cnty. Mut. Ins. Co. v. Kelley,* 284 S.W.3d 805, 807 (Tex.2009) (per curiam)).

***Third***, the plain language of the SARS exclusion bars coverage because it "excludes any loss directly or indirectly ***arising out of, contributed to, or by resulting from***" SARS. App. 039 (emphasis added). If COVID-19 is "caused by" a SARS virus, then any loss stemming from COVID-19 would naturally "aris[e] out of," or "result[] from" SARS. More fundamentally, the Petition confirms that Plaintiffs seek coverage for their "losses associated with the impact [of] the SARS CoV-2 coronavirus … and its resulting disease, COVID-19 (collectively, 'COVID-19')[.]" Pet. ¶ 15. Not only do Plaintiffs themselves call the virus and disease "collectively, COVID-19," but they concede that their losses are associated with both—and are thus excluded.

For all these reasons, the Court should reject Plaintiffs' attempt to manufacture ambiguity. *See Forbau v. Aetna Life Ins. Co.***,** 876 S.W.2d 132, 134 (Tex. 1994) ("[N]either conflicting expectations nor disputation is sufficient to *create* an ambiguity.").

**III. Plaintiffs Cannot Demonstrate the "Interruption by Civil or Military Authority" Provision Applies in the Absence of the "Special Time Element."**

Without the "Special Time Element," Plaintiffs cannot demonstrate any "peril insured" to trigger the "Interruption by Civil or Military Authority" provision. Plaintiffs do not meaningfully contest this assertion. Nor could they. Plaintiffs' case against Defendants depends on the validity of the "Special Time Element," so much so that they have failed to allege an alternative "peril insured" that could invoke coverage under the "Civil or Military Authority" provision. This failure dooms their argument—they have nothing else to base their claim upon.[5] Accordingly, there is no coverage under the "Civil or Military Authority" provision.

**IV. Plaintiffs Cannot Show Any "Direct Physical Loss, Damage or Destruction" as Required by the Civil or Military Authority Provision.**

As discussed in IUIC's Motion, even without the "Special Time Element," Plaintiffs cannot show any "direct physical loss, damage or destruction," which is necessary to invoke the "Civil or Military Authority" provision. Plaintiffs essentially concede their inability to make this showing—instead, they reaffirm their position that the Policy only requires "imminent loss" to trigger coverage. *See* Resp. at 9-13. Plaintiffs also improperly urge the Court *not* to consider the language in the "Insuring Agreement" and "Time Element" provisions, calling them a "red herring." *See* Resp. at 3-4. But the basic principles of contract interpretation under Texas law require a contract to be construed as a whole, rather than isolating specific provisions. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("In interpreting these insurance policies as any other contract, we must read all parts of each policy together and exercise caution not to isolate

[5] Plaintiffs acknowledge that the "general business interruption coverage" requires physical loss, damage or destruction. *See* Pet. ¶ 21. Moreover, even though Plaintiffs reference the "Goodwill and Public Relations" provision, they failed to sufficiently raise an argument by presenting it in a footnote. *See* Pet. at 9 n.3; *see also OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 456 (5th Cir. 2020) (acknowledging "arguments raised in a perfunctory manner, such as in a footnote, are waived") (citation omitted)); *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("A single conclusory sentence in a footnote is insufficient to raise an issue for review.").

particular sections or provisions from the contract as a whole."); *see also Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (acknowledging courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless"). As discussed in IUIC's Motion, the Civil Authority Provision—construed in consideration of the Policy as a whole—requires ***existing or imminent*** "physical loss, damage or destruction" to trigger coverage, for numerous reasons, many of which are not addressed by the Response.

***First***, as detailed in IUIC's Motion, the Policy's Insuring Agreement defines the "peril insured" as "all risks of direct physical loss, damage or destruction . . . to the type of property insured hereunder." Mot. at 14; App. 020. Plaintiffs' attempt to distinguish authority on this point is telling: the Response addresses *Golden Corral Corp. v. Illinois Union Insurance Co.*, 559 F. Supp. 3d 476 (E.D.N.C. 2021), *aff'd*, 2022 WL 3278938 (4th Cir. Aug. 11, 2022), which granted judgment on the pleadings to the insurer, because the insured's losses did not result from "a peril insured by this policy." The Response calls *Golden Corral* "critically different" from this case, because (in Plaintiffs' words) "the court looked back to the general 'all risks' language to determine what was meant by "peril insured" and determined that under the all risks coverage, it required direct physical loss, damage or destruction." Resp. at 15. The Response quotes from *Golden Corral's* holding: that covered losses are those resulting from "a peril insured by this Policy," and "[t]he Insuring Agreement defines insured perils as 'all risks' of direct physical loss, damage or destruction.'" *Id*. (quoting *Golden Corral*, 559 F. Supp. 3d at 489). But *that is precisely the case here*: the Insuring Agreement specifies that this Policy likewise insures against "all risks of direct physical loss, damage or destruction." App. 020.

***Second***, the Response completely ignores the first limitation in this provision: it only

"insures the '*Time Element' loss* sustained" when actual or imminent physical losses cause business interruption through a government order. App. 037 (emphasis added). The Policy provides that "Time Element" Business Interruption losses are those "resulting from the necessary interruption or reduction of business operations conducted by the Insured ***and** caused by direct physical loss, damage or destruction, of the property"* insured. App. 031 (emphasis added). Because the Civil and Military Authority provision expressly limits its coverage to Time Element losses—which are *only* those caused by direct physical loss, damage, or destruction—Plaintiffs' argument that they have coverage without such physical damage must fail.

## V. Multiple Exclusions Apply to Bar Coverage.

### A. The "Pollution, Contamination" Exclusion Bars Coverage.

As discussed in IUIC's Motion, the language of the "Pollution, Contamination" exclusion expressly applies in the event of losses due to "release, discharge, escape or dispersal of" a "virus." *See* Mot. at 19-20. Plaintiffs' divergent but strained interpretation would again require the Court to *ignore* the plain meaning of the included language, and *read in* additional language; namely, by insisting (i) there has been no "release, discharge, escape, or dispersal" of a contaminant; and (ii) the exclusion does not apply where a virus has been dispersed, and instead only where "'material' ***containing*** viruses (or other toxins)" has been dispersed. Resp. at 17, 19 (emphasis added). Plaintiffs' interpretative efforts, however, are in vain.

***First***, Plaintiffs provide no authority for the proposition that there was no "dispersal" of a virus here. Instead, Plaintiffs' Petition concedes that their losses were due to an "outbreak" of a virus, which reached the level of a "pandemic," and that COVID-19 has "infected nearly 100 million people . . . and *continues to spread*." Pet. ¶¶ 37, 39, 44, 53. This certainly meets the "generally accepted meaning" of dispersal of COVID-19. *See RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). The Houston Court of Appeals has expressly held that COVID-19

is "dispersed" under a nearly identical pollution exclusion. *See Baylor*, 2024 WL 438019, at *3 ("'Disperse' means 'to cause or become spread widely.'. . . Thus, [plaintiff]'s claims are for 'loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened ... dispersal' of the virus, as required by the Exclusion.").

***Second***, Plaintiffs' argument that the Policy only excludes "situations where 'material' ***containing*** viruses (or other toxins) has been released, discharged, escaped or dispersed" (Resp. at 19) adds language to the Policy and changes its meaning. There is no language concerning a "container" for the virus, much less that any "material" serves this "containing" role. Instead, the plain language defines the relevant "material" ***to be*** a virus or other qualifying substance: "any material that [poses certain risks] including, but not limited to [a]…virus[.]" App. 041. Because Plaintiffs' entire claim relies on the dispersal of a virus, this exclusion squarely bars coverage.

**B. The "Delay, Loss of Use or Loss of Market" and/or the "Indirect or Remote Loss or Damage" Exclusions Bar Coverage.**

The "Delay, Loss of Use or Loss of Market" and "Indirect or Remote Loss or Damage" exclusions also bar coverage. Plaintiffs fail to address the numerous cases cited in IUIC's Motion.[6] Instead, they argue that these exclusions cannot apply if coverage is invoked under the "Special Time Element" or "Civil or Military Authority" provisions because the exclusions would "swallow the coverage provided under those provisions." Resp. at 23. Not so, for at least two reasons.

***First***, the GAE added these exclusions at the same time it deleted the "Special Time Element." *See* App. 092 ("GAE"). There was no conflict between the "Special Time Element" and the exclusions because they were never meant to overlap. ***Second***, the "Civil or Military Authority"

[6] In contrast to IUIC's numerous citations, Plaintiffs only cite a single case in the COVID-19 context that supports their interpretation, *Live Nation Ent., Inc. v. Factory Mut. Ins. Co.*, No. LA CV21-00862, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022). However, the *Live Nation* court granted reconsideration and reversed its own decision on October 8, 2024. *See* No. LA CV21-00862, at 11* (C.D. Cal. Oct. 8, 2024) ("[T]he Complaint has not alleged that the Communicable Disease provision is covered as physical damage or loss under the Policy.")

provision provides coverage for direct ***physical*** loss or damage, which is distinguishable from the ***intangible*** damages covered by these two exclusions. *Compare* App. 037, *with* App. 092. There is no conflict because these provisions and exclusions address different types of damages.

Indeed, it is Plaintiffs' interpretation that fails to harmonize all portions of the Policy, rendering the exclusions "meaningless." *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014). Under Plaintiffs' interpretation, the Court would have to read out the exclusions (contained in a controlling endorsement) because they would conflict with the "Special Time Element" or "Civil or Military Authority" provisions; this would turn established rules of interpretation on their heads. *See Kern v. Sitel Corp.*, 517 F.3d 306, 310 (5th Cir. 2008) (rejecting interpretation as "unreasonable" because it would render a sentence of the relevant section "meaningless"); *Illinois Tool Works, Inc. v. Harris*, 194 S.W.3d 529, 535–36 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (similar).

## VI. Plaintiffs Cannot Meet the Heightened Pleading Standards of Rule 9(b).

Finally, Plaintiffs cannot meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b), applicable to violations of the Texas Insurance Code. *See, e.g. Jana Food Serv., Inc. v. Nationwide Agribusiness Ins. Co.*, No. 4:16-CV-864-A, 2016 WL 7165973, at *3 (N.D. Tex. Dec. 7, 2016). Plaintiffs do not dispute this, arguing instead that some of their claims do not sound in fraud. *See* Resp. at 25. "Texas district courts, however, consistently apply Rule 9(b)'s requirements to claims under the Texas Insurance Code and DTPA." *Bige, Inc. v. Penn-Am. Ins. Co.*, No. 1-15-CV-292 RP, 2015 WL 5227726, at *4 (W.D. Tex. Sept. 8, 2015) (collecting cases); *see Jana Food*, No. 4:16-CV-864-A, 2016 WL 7165973, at *3. This Court should do the same.

## CONCLUSION

For the foregoing reasons, IUIC respectfully asks the Court to grant its Motion to Dismiss and dismiss each of Plaintiffs' claims against it with prejudice.

Dated: January 10, 2025

O'MELVENY & MYERS LLP

By: */s/Kristin C. Cope*

Kristin C. Cope
State Bar No. 24074072
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201-2692
Telephone: +1 972 360 1900
Facsimile: +1 972 360 1901

*Attorney for Defendant*
*Illinois Union Insurance Company*

## CERTIFICATE OF SERVICE

On January 10, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Kristin C. Cope*
Kristin C. Cope