**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CROW FAMILY, INC., CROW HOLDINGS CAPITAL PARTNERS, L.L.C., ANATOLE PARTNERS III, L.L.C., and WINDSOR COURT HOTEL PARTNERS, L.L.C.,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § | **CIVIL ACTION NO. 3:24-CV-2490-B** |
| | § | |
| **ALLIED WORLD ASSURANCE COMPANY, LTD., CONTINENTAL CASUALTY COMPANY, ILLINOIS UNION INSURANCE COMPANY, and LLOYD'S UNDERWRITERS – BRIT,** | § § § § § § | |
| **Defendants.** | § | |

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

David H. Timmins
Texas Bar No. 00785106
dtimmins@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800
Dallas, Texas 75201
Telephone: (214) 750-3610
Facsimile: (214) 750-3612

ATTORNEY FOR DEFENDANT
CONTINENTAL CASUALTY COMPANY

Defendant Continental Casualty Company ("Continental") files this Reply in Support of its Motion to Dismiss [Dkt. 9].

## SUMMARY

Plaintiffs' Response concedes they have not pleaded direct physical loss, damage, or destruction to property. This concession should end the case. Civil Authority coverage—the only remaining coverage as to Continental—applies only where Plaintiffs can demonstrate "direct physical loss, damage or destruction or imminent loss by a peril insured by this Policy" within ten miles of an insured location. Plaintiffs have not alleged, and do not argue, that any actual or imminent physical loss occurred, so their claims fail.

Plaintiffs fail to provide a reasonable basis for their theory that "imminent loss by a peril insured by this Policy" is divorced from the "direct physical" requirement of the Civil Authority coverage. The sole basis for Plaintiffs' argument is that the Civil Authority provision should encompass the occurrences addressed in the Special Time Element ("STE") coverage extension—"actual loss sustained by the Insured resulting from cancellation of or inability to accept bookings for accommodations and/or a cessation or diminution of trade due to a loss of potential customers, as a direct result of . . . outbreak of a contagious and/or infectious disease, the discovery of which causes restrictions on the use of that location on the order of the competent local authority." Plaintiffs, however, fail to persuasively address the authority Continental cited rejecting virtually identical attempts to "reverse activate" civil authority coverage by using another special, extended coverage (here, the STE coverage) that has its own specific sublimit. Plaintiffs' interpretation would (i) make the two insuring provisions redundant, (ii) render meaningless the sublimit applicable to the STE provision, (iii) negate the

fundamental requirement of “direct physical loss, damage or destruction” reflected in the policy’s main Insuring Agreement and the Business Interruption insuring provision, as well the Civil Authority provision; and (iv) lead to the absurd conclusion that actual losses must be physical, but imminent losses can be physical or non-physical.

Plaintiffs also fail to respond to, and therefore concede, Continental’s arguments that (a) the governmental COVID-19 orders were not issued “as a result” of any direct physical loss, damage, or destruction or imminent loss to property, and (b) the orders did not prevent “access” to Plaintiffs’ locations. Plaintiffs’ failure to plausibly allege those elements requires dismissal.

Finally, Plaintiffs’ argument that the Policy’s contamination exclusion—which specifically excludes viruses—should not apply is inconsistent with their own allegations. While Plaintiffs argue in the brief that person-to-person transmission of a virus is not a “release, discharge, escape or dispersal” of a contaminant, their petition alleges a worldwide viral outbreak and pandemic that spread to Dallas and New Orleans, including Plaintiffs’ properties (Petition ¶¶ 34-41), which necessarily qualifies as “dispersal” of the virus.

## ARGUMENT AND AUTHORITIES

## I. PLAINTIFFS FAIL TO ALLEGE ACTUAL OR IMMINENT DIRECT PHYSICAL LOSS BY A PERIL INSURED

### A. Plaintiffs Have Not Alleged An Imminent Physical Loss

Plaintiffs admit their Petition does not allege “direct physical loss, damage or destruction” to property, and instead argue that “imminent loss by a peril insured” has no “physical” requirement. (Resp. 3–4, 9–11.) There is no dispute that Continental has fully paid any amounts due under the STE coverage for losses sustained because of “contagious and/or infectious disease,” but Plaintiffs nevertheless argue that the STE coverage can be effectively

extended beyond its sublimit by using it to trigger the Civil Authority coverage. (*Id.* at 13–14.) This argument fails for multiple reasons.

First, Plaintiffs offer no justification for divorcing the phrase "imminent loss" in the Civil Authority provision from the immediately preceding phrase "physical loss, damage or destruction." (Mot. 12–13.) Plaintiffs do not dispute that both the main "Insuring Agreement" and the "Business Interruption" insuring provision require direct physical loss. Plaintiffs instead point to two other coverage provisions that contemplate imminent losses, but both contemplate imminent physical losses, reinforcing the notion that, as reflected in the policy's Insuring Agreement, the coverage applies only to physical losses. (*Id.*) Plaintiffs cite the doctrine of *noscitur a sociis* -- "a word is known by the company it keeps" -- but the application of that doctrine to the Civil Authority provision would mean that "imminent loss" contemplates an imminent "direct physical loss." (Resp. 12 n.10, 19.) In the Civil Authority coverage, the word "imminent" modifies "direct physical loss, damage or destruction." Likewise, Plaintiffs mistakenly rely on the word "or" between the phrases "direct physical loss, damage or destruction" and "imminent loss by a peril insured;" "or" makes the phrase disjunctive, but only insofar as it contemplates a directly physical loss that is either existing ***or*** imminent. (*Id.* at 12.)

Second, Plaintiffs' argument that "multiple coverages can be triggered by a single event" only bolsters Continental's position that "imminent loss" must be physical. (Resp. 11–12.) Plaintiffs posit a hypothetical situation in which "damage to a gas line" triggers two Time Element coverages: Service Interruption and Civil Authority. (*Id.* at 11.) But Plaintiffs' hypothetical works precisely (and only) because "damage to a gas line" is physical in nature—i.e., because any "imminent loss" to a gas line contemplated by the Civil Authority provision

would be "direct physical loss." Moreover, loss due to "Service Interruption, Property Damage and 'Time Element' combined" is specifically sublimited to $50,000,000.00—meaning that although those two coverages might be triggered, the sublimit applies to any recovery up to that amount for both coverages. This nullifies Plaintiffs' conclusion (Resp. 12) because the STE sublimit does ***not*** address any other Time Element loss, like loss due to a civil authority order.

Plaintiffs also argue that the STE and Civil Authority coverages "cover different losses," because the former covers "cancellations and the inability to accept bookings and their equivalent" and the latter covers other losses such as "spa appointments, parking fees, restaurant income, and other revenue lost during this period." (Resp. 12.) There is no difference between these two types of losses—all of this actual and potential revenue loss "result[s] from cancellation of or inability to accept bookings for accommodations ***and/or*** a cessation or diminution of trade due to a loss of potential customers." (Resp. 12 & n.10.) This is just one more reason why the STE sublimit is important: it is a specialized, isolated, and sublimited coverage that is intended to capture those kinds of losses when they are caused by the ***specific causes of loss*** listed in the STE provision. There are no "other losses" for the Civil Authority provision to cover. (Resp. 12.)

**B. The STE Coverage Cannot Be Used To Trigger Civil Authority Coverage**

Plaintiffs avoid engaging directly with Continental's argument that construing the STE coverage as triggering Civil Authority coverage would render meaningless the Special Time Limit sublimit of insurance. Continental cited *Century 21 Department Stores, LLC v. Starr Surplus Lines Insurance Co.,* 207 N.Y.S.3d 510 (1st Dep't 2024) for that conclusion. (Mot. 17.) Plaintiffs' only response is the false claim that *Century 21* is "inapposite because civil authority

coverage in that case was triggered only by 'physical loss or damage.'" (Resp. 13 n.11.) To the contrary, *Century 21* involved virtually the same language as here, with an additional caveat—not present here—that the insured property need not have been damaged:

> This policy is extended to include for Business Interruption loss reimbursement including Extra Expense and Rental Coverages as defined hereunder during the period of time not exceeding 60 consecutive days, when, ***as a result of a peril not otherwise excluded***, access to the vicinity is restricted by order of civil authority, regardless of whether any property insured by this policy shall have been damaged.

207 N.Y.S.3d at 511 (emphasis added). Construing "a peril not otherwise excluded," the *Century 21* court expressly rejected the plaintiffs' argument that an infectious disease coverage extension could be used to trigger the civil authority coverage:

> Plaintiffs' argument that the "Murder, Suicide, and Infectious or Contagious Diseases" (MSICD) coverage extension, of which the limits of $5 million have already been paid by defendant insurers, should be read to provide coverage for these circumstances up to the full program limits under all other coverages, would render the MSICD extension sublimit meaningless and violates basic rules of contract construction.

*Id.* at 512. Plaintiffs have no answer to *Century 21* or its logic because their position contravenes the clear, specific sublimit for STE coverage in the Policy. (Resp. 15–18.)

### C. Plaintiffs Have Not Established that Civil Authority Orders Were Issued as a Result of "Imminent Loss by a Peril Insured"

Plaintiffs ignore, and therefore concede, another argument in Continental's opening brief—none of the civil orders Plaintiffs identify were issued "as a result of" an "imminent loss by a peril insured." (Mot. 18.) Plaintiffs do not dispute the civil authority orders were issued to mitigate the spread of COVID-19, not to protect or preserve property. (*Id.* 18–19; Petition ¶¶ 39, 49.) But they also cannot plausibly argue that "imminent loss by a peril insured" is satisfied by the "loss" contemplated by the STE coverage, because they are different concepts.

The Civil Authority coverage requires that the civil authority order be issued "as a result of direct physical loss, damage or destruction or imminent loss by a peril insured." Plaintiffs suggest that "imminent loss" should be triggered by the STE coverage, but that provision only covers "the ***actual loss*** sustained by the Insured resulting from cancellation of or inability to accept bookings for accommodations and/or a cessation or diminution of trade due to a loss of potential customers, as a direct result of . . . contagious and/or infectious disease." (Mot. 9.). Plaintiffs' reading requires them to conflate the ***cause*** of loss (contagious and/or infectious disease) with the ***actual or imminent*** loss they claim to have suffered (loss of bookings). In other words, COVID-19 cannot be both the "peril insured" and the "imminent loss."

The civil authority orders here were not issued because of businesses' "imminent losses" due to cancellation of bookings. Instead, civil authorities issued orders because of the risk to human health—which is ***not*** the type of loss Plaintiffs allege. (*See* Resp. 11 (citing Pet. ¶¶ 47–50, which describe Plaintiffs' losses as purely economic in nature); *see, e.g.*, *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 458-59 (5th Cir. 2022) (holding COVID civil authority orders were not issued because of physical damage). By contrast, the "imminent loss" provision makes perfect sense in the context of physical loss or damage to property, because it contemplates an imminent loss of the type actually insured (direct physical loss or damage to property) by a peril insured (all risks of direct physical loss or damage, like fire or flood). Plaintiffs cannot hybridize the STE and Civil Authority coverages using two different concepts of "loss" that are inconsistent with the actual policy language.

### D. Plaintiffs Concede that Access to the Properties Was Not Prevented

Plaintiffs also do not answer, and therefore concede, Continental's argument that access to their properties was not "prevented" by any civil order, as required by the Civil Authority coverage. (Mot. 20.) Plaintiffs do not even attempt to address the authority Continental cited. (*Id.* 20–21.) Even where a civil authority order limits the kind of services that can be provided, it does not physically deprive an insured of access to its property. *See Terry Black's*, 22 F.4th at 458-59 (5th Cir. 2022) (holding civil authority coverage did not apply). Plaintiffs' claims should be dismissed because of the failure to plead facts supporting this element.

## II. PLAINTIFFS' CLAIMS ARE BARRED BY THE "POLLUTION, CONTAMINATION" EXCLUSION

Plaintiffs attempt to avoid the contamination exclusion mainly by characterizing it as applying only to traditional environmental pollution, referring to it as the "Pollution" exclusion. (*E.g.*, Resp. 16.) This framing is inaccurate and disregards the plain language of the exclusion, which specifically addresses dispersal of viruses. Substantively, Plaintiffs argue that the exclusion does not apply for three reasons: (i) the Petition does not allege a "release, discharge, escape or dispersal or 'contaminants or pollutants (Resp. 16–19); (ii) the exclusion only applies to "materials" (*id.* at 19); and (iii) the exclusion would render meaningless the contagious disease coverage found in the STE provision. (Resp. 20–22.) None of those arguments has merit.

First, Plaintiffs' argument that Continental "did not include a broad virus exclusion" (*Id.* at 17) is impossible to square with the exclusion's specific reference to "virus." Plaintiffs wrongly assert that the insurers do not address "how Covid-19 was released, discharged, escaped or dispersed." (*Id.* at 17.) But the Petition plainly alleges a "dispersal" of the virus. Dictionaries define "dispersal" to mean "the act or result of dispersing…especially: the process or result of

the spreading of organisms from one place to another." *See, e.g.*, "Dispersal," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/dispersal. The Petition alleges that COVID-19 "continues to spread" and that the civil authority orders were issued to "reduce the rapid spread" of COVID-19. (Petition ¶¶ 39, 49; *id.* ¶ 37 (describing the "COVID-19 outbreak" as a "pandemic).)

The Petition also cites (at footnote 4) a World Health Organization ("WHO") timeline establishing the dispersal of the Coronavirus initially detected in Wuhan, China and spreading globally. (*Id.* ¶ 34.) The Petition alleges that a global health emergency was declared by the month after the initial report, that "the number of cases, deaths and affected countries continued to climb" over the next six weeks "to the point that the WHO classified the COVID-19 outbreak as a 'pandemic,'" and that the presence of COVID-19 is worldwide." (*Id.* ¶¶ 35-38). The Petition further alleges that COVID-19 has infected more than 100 million people in the U.S. and "continues to spread," including to Dallas and New Orleans. (*Id.* ¶¶ 39-41.) These circumstances clearly allege release or dispersal of a virus for purposes of the exclusion. (*See* Mot. 21–22.)

The case law further discredits Plaintiff's argument. Continental's motion cited multiple cases holding that contamination exclusions using the word "virus" apply to losses related to COVID-19. (Mot. 21.) In *Baylor College of Medicine v. XL Insurance America, Inc.*, the Houston Court of Appeals specifically held that a similar exclusion for "release, discharge, escape or dispersal of Contaminants" applied to the COVID-19 pandemic because the plaintiff's allegation that the virus had spread in the community was an allegation of "dispersal." No. 14-22-00145-CV, 2024 WL 438019, at *3 (Tex. App. – Houston [14th Dist.] Feb. 6, 2024, no pet.). Other courts have rejected similar arguments that exclusions for "release, discharge, escape, or

dispersal" of virus should not apply to COVID-19. *See, e.g., Circus Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F. Supp. 3d 1269, 1277–78 (D. Nev. 2021), *aff'd*, 2022 WL 1125663 (9th Cir. Apr. 15, 2022); *Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F. Supp. 3d 1034 (W.D. Mo. 2020). Likewise, in other contexts, courts have refused to apply such a constrictive interpretation of "dispersal." *See Lexington Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd.*, No. CIV.A. 399CV1623D, 2002 WL 356756 (N.D. Tex. March 5, 2002) (holding contamination exclusion applied to mold in apartments because growth within apartments was "dispersal").

The *Pebblebrook* case Plaintiffs cite is a one-page Pennsylvania trial court order with its reasoning contained entirely in a single footnote. (Resp. 18–19.) And that reasoning defies logic: the court found the exclusion did not apply because "[t]he COVID 19 pandemic was not caused by actions listed in Landmark's claimed exclusion," namely, any "discharge, dispersal, seepage, migration, release, escape or application." (*Id.*) At minimum, this interpretation cannot be squared with the plain meaning of the word "dispersal" and the Petition's allegations concerning the "spread" of the virus causing COVID-19. And none of the other cases Plaintiffs cite address "dispersal" of a virus—they all pertain to environmental or chemical contamination or pollution.

Second, Plaintiffs unreasonably stretch their argument even further, claiming the exclusion only applies to "materials" that "a virus is not a 'material.'" (*Id.* at 19.) But it is clear that "material" includes "virus" because "material" in the definition of "contaminants or pollutants" is followed by the statement "including, but not limited to, bacteria, virus, or [certain statutorily listed] hazardous substances." Moreover, even under Plaintiffs' proposed definition—that "material" is "the elements, constituents, or substances of which something is composed"—a virus is "material." (*Id.*) Plaintiffs state that "[a] virus is...a large group of submicroscopic

infectious agents that are usually regarded as nonliving extremely complex molecules." (*Id.*) At base, then, a virus is composed of a group of "infectious agents" constituting "complex molecules," so a virus is necessarily "material."

Finally, Plaintiffs argue the exclusion would render meaningless the contagious disease coverage in the STE provision. (Resp. 20–22.) But that simply recognizes the specialized nature of the STE coverage extension, which by its nature extends coverage to a specific loss that would otherwise be excluded. Moreover, Plaintiffs can hardly claim that the STE coverage extension is illusory because Continental already paid Plaintiffs the amount due under that coverage.

**CONCLUSION**

Defendant Continental Casualty Company respectfully requests that the claims asserted in Plaintiffs' Original Petition be dismissed with prejudice.

Dated: January 10, 2025.

Respectfully submitted,

*/s/ David H. Timmins*

David H. Timmins
Texas Bar No. 00785106
dtimmins@spencerfane.com
SPENCER FANE LLP
2200 Ross Avenue, Suite 4800
Dallas, Texas 75201
Telephone: (214) 750-3610
Facsimile: (214) 750-3612

ATTORNEYS FOR DEFENDANT
CONTINENTAL CASUALTY COMPANY

**CERTIFICATE OF SERVICE**

I certify that on January 10, 2025, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF filing system, which effected service on all counsel of record.

*/s/ David H. Timmins*
David H. Timmins