UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CROW FAMILY, INC.; CROW HOLDINGS CAPITAL PARTNERS, L.L.C; ANATOLE PARTNERS III, L.L.C.; and WINDSOR COURT HOTEL PARTNERS, L.L.C; | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-2490-B |
| CONTINENTAL CASUALTY COMPANY; ILLINOIS UNION INSURANCE COMPANY; and LLYOD'S UNDERWRITERS – BRIT, | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Continental Casualty Company ("Continental")'s Motion to Dismiss (Doc. 9), Defendant Illinois Union Insurance Company ("IUIC")'s Motion to Dismiss (Doc. 10), and Defendant Lloyd's Underwriters – Brit ("Lloyd's")'s Motion to Dismiss (Doc. 8). For the following reasons, the Court **GRANTS** Defendants' Motions (Docs. 8, 9, 10) and **DISMISSES** Plaintiffs' Complaint **WITH PREJUDICE**. A final judgment will follow.

I.

BACKGROUND

This is an insurance coverage dispute arising from the Covid-19 pandemic. Plaintiffs Crow Family, Inc.; Crow Holdings Capital Partners, LLC; Anatole Partners III, LLC; and Windsor Court Hotel Partners, LLC (collectively "Crow") own three hotels (collectively "Properties"). Doc. 1-C, Pet.,

¶ 17. Defendants IUIC, Continental, and Lloyd's (collectively "Insurers") insured the Properties between June 1, 2019, and June 1, 2020. *Id.* ¶ 25.

Crow's business suffered financial losses because of state and local stay-at-home orders issued during the Covid-19 pandemic. *Id.* ¶ 47. Crow's Properties' "normal business operations were interrupted or reduced because access . . . was prevented by orders of civil or military authorities." *Id.* ¶ 50.

Each Insurer denied Crow the coverage it sought for these losses under their Policies. *See generally id.* Each Policy includes a Civil or Military Authority Provision (the "Civil Authority Provision") that applies to the Business Interruption Time Element Provision ("Time Element Provision"). Doc. 8-1, App'x, 27; Doc. 9-1, App'x, 43; Doc. 10-1, App'x, 37.

The Time Element Provision states:

> This Policy insures loss resulting from the necessary interruption or reduction of business operations conducted by the Insured and caused by direct physical loss, damage or destruction, of the property of the type insured hereunder, by a peril insured by this Policy.

Doc, 8-1, App'x, 21; Doc. 9-1, App'x, 37; Doc, 10-1, App'x, 31.[1]

The Policies also contain identical Civil Authority Provisions that apply to the Time Element Provision and state:

> This Policy insures the "Time Element" loss sustained during the period of time when, as a result of direct physical loss, damage or destruction or imminent loss by a peril insured by this Policy within ten (10) miles of an insured "location," normal business operations are interrupted or reduced because access to that "location" is prevented by order of civil or military authority.

---

[1] The Court will consider the insurance policies at the pleading stage because they are incorporated by reference into the Complaint. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (a district court can consider documents that are referred to in a plaintiff's complaint and are central to their claim).

Doc. 8-1, App'x, 27; Doc. 9-1, App'x, 43; Doc. 10-1, App'x, 37. Thus, the Civil Authority Provision requires there to be a Time Element loss. The IUIC Policy included a General Amendatory Endorsement which amended the provision to five miles. Doc. 10-1, App'x, 91–92. The Insurers denied coverage under the Civil Authority Provision. Doc. 1-C, Pet., ¶ 83.

IUIC also denied coverage under its Special Time Element. Each Policy had a Special Time Element Provision to insure income lost due to the outbreak of infectious diseases:

> This policy is extended to cover the actual loss sustained by the Insured resulting from cancellation of or inability to accept bookings for accommodations and/or a cessation or diminution of trade due to a loss of potential customers, as a direct result of: . . . b) The outbreak of a contagious and/or infectious disease, the discovery of which causes restrictions on the use of that location on the order of the competent local authority. . . In addition, this Policy excludes any loss directly or indirectly arising out of, contributed to, or by resulting from Severe Acute Respiratory Syndrome (SARS), Avian Flu, and or atypical pneumonia, or fear or threat thereof.

Doc. 8-1, App'x, 29; Doc. 9-1, App'x, 45; Doc. 10-1, App'x, 39.

Although IUIC's Special Time Element coverage has a specific sublimit of $25,000, Doc. 10-1, App'x, 15; Doc. 10, Mot., 5 n.5, the policy's General Amendatory Endorsement deleted the Special Time Element in its entirety. Doc. 10-1, App'x, 91–92. Therefore, IUIC did not pay Crow for Special Time Element coverage. Continental and Llyod's paid their "quota share portions . . . under the sub-limited Special Time Element Coverage, but [IUIC has [not]." Doc. 1-C, Pet., ¶ 22 n.1.

Crow asserts four causes of action: (1) Breach of Contract for the Special Time Element against IUIC; (2) Breach of Contract for the Civil Authority Provision against all Insurers; and (3)–(4) violations of Chapters 542 and 541 of the Texas Insurance Code against all Insurers. *Id.* ¶¶ 63–98. Each Insurer has moved to dismiss Crow's Complaint in its entirety for failure to state a claim.

Doc. 8, Lloyd's Mot, 1; Doc. 9, Continental's Mot, 1; Doc. 10, IUIC's Mot., 1. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). But the "court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

The Court **GRANTS** the Insurers' Motions to Dismiss and **DISMISSES** Crow's Complaint in its entirety **WITH PREJUDICE**. First, the Court finds Crow failed to state a claim against all Insurers for Breach of Contract for the Civil Authority Provision. Second, the Court finds Crow failed to state a claim against IUIC for breach of the Special Time Element coverage. Third, the Court dismisses the Texas Insurance Code claims. Lastly, the Court does not grant leave to amend.

Courts interpret insurance policies using ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020). The Court's "primary concern is to give effect to the intentions of the parties as expressed by the policy language." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the Court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning." *Id.* However, "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (quotation omitted). "[A] court should interpret an insurance policy in a way which (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3) avoids rendering parts of the policy inoperative or meaningless." *Great Am. Ins. Co. v. Emps. Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (quotations and alterations omitted).

 "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Am. Home Assur. Co.*

*v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quotation and alteration omitted). "An ambiguity does not exist, however, simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* (quotation omitted). "When an exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning, [giving] no deference to the insured's interpretation." *Id.* (citation omitted).

A.    *Crow Failed to State a Claim Against All Insurers for Breach of the Civil Authority Provision.*

Crow failed to plausibly allege that any of the Insurers breached the Civil Authority Provision. First, the Court finds that the Policies' Civil Authority Provisions do not cover "imminent loss" caused by Covid-19. Second, the Court finds that the Policies' Special Time Element Provision for loss from infectious disease cannot trigger coverage under the Policies' Civil Authority Provisions. Third, Crow cannot allege direct or imminent physical loss from the Covid-19 orders. Accordingly, Crow's claim for breach of the Civil Authority Provision against all Insurers is dismissed with prejudice.

1.    The Policies' Civil Authority Provisions Do Not Cover "Imminent Loss" Caused by Covid-19.

First, the Court finds the Policies' Civil Authority Provisions only cover *physical* loss, so they do not cover loss caused by Covid-19. The Insurers' Policies each have a Civil Authority Provision that applies to the Time Element Provision. It states:

> This Policy insures the "Time Element" loss sustained during the period of time when, as a result of direct physical loss, damage or destruction or imminent loss by a peril insured by this Policy within ten (10) miles of an insured "location," normal business operations are interrupted or reduced because access to that "location" is prevented by order of civil or military authority.

-6-

Doc. 8-1, App'x, 27; Doc. 9-1, App'x, 43; Doc. 10-1, App'x, 37.[2]

The Civil Authority Provision requires Crow to allege three elements to trigger coverage: (1) "direct physical loss, damage or destruction or imminent loss by a peril insured" within ten miles of the Properties; that (2) causes a "civil or military authority" to issue an "order" that prevents access to the Properties; (3) and reduces "normal business operations." *Id.* The parties dispute the meaning of "direct physical loss, damage or destruction or imminent loss by a peril insured." Crow argues that this provision contains two separate phrases. According to Crow, the first phrase covers physical loss, damage or destruction and the second phrase covers imminent loss by any insured peril, including non-physical loss. Doc. 15, Resp., 10–11. Accordingly, Crow argues that the Civil Authority Provision covers losses caused by local governments placing restrictions on the use of the Properties to combat the health hazards of Covid-19. *See id.* The Insurers argue that even if the Provision contains two distinct phrases, the second phrase is only distinct insofar as it covers *imminent* physical loss, damage, or destruction instead of *actual* physical loss, damage, or destruction. *See* Doc. 8, Lloyd's Mot. 12–13; Doc. 9, Continental's Mot., 12–13; Doc. 10, IUIC's Mot., 14–15. Thus, the parties dispute whether coverage under the Civil Authority Provision requires physical loss.

The Court concludes that to survive a motion to dismiss, Crow must have plausibly alleged that the civil orders causing its hotel closures were responding to an actual or imminent threat of *physical* loss, damage, or destruction. While the Civil Authority Provision has not been addressed by a court within the Fifth Circuit, the Fourth Circuit summarily affirmed a district court opinion that

---

[2] The IUIC Policy included a General Amendatory Endorsement which amended the provision to five miles. Doc. 10-1, App'x, 92.

held the same Civil Authority Provision that is at issue here only covered imminent or actual physical loss. *See Golden Corral Corp. v. Ill. Union Ins. Co.*, 559 F. Supp. 3d 476 (E.D.N.C. 2021), *aff'd*, 2022 WL 3278938 (4th Cir. Aug. 11, 2022). "Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex. 1995). "Thus, when no Texas court has interpreted a particular provision, [the Court] look[s] to the courts of other states for guidance as to how the Texas Supreme Court might interpret an issue." *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 626 (5th Cir. 1998).

The Court finds *Golden Corral* persuasive. There, a restaurant group argued that it did not need to allege physical loss, damage, or destruction from the presence of Covid-19 in its restaurants and only needed to allege imminent loss by a peril insured. 559 F. Supp. 3d at 488. The court found that "interruptions in normal business operations attributable to a civil order must be the result of imminent loss arising from a risk of direct physical loss, damage, or destruction" because "imminent loss is inextricably connected to risks of tangible, physical harm to and loss of property." *Id.* at 489.

The Policies do not define the terms "imminent" or "loss." When an insurance policy does not define a term, the Court "must give [it] its common, ordinary meaning." *Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). To discern the ordinary meaning of undefined terms in insurance contracts, Texas courts "look first to dictionary definitions." *Id.* (citing *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)). "Imminent" means "impending threateningly" or "close at hand in its incidence." *Imminent*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/imminent_adj?tab=meaning_and_use#807911

(last visited Apr. 28, 2025). "Loss" means "[p]erdition, ruin, destruction; the condition or fact of being 'lost', destroyed, or ruined." *Loss*, Oxford English Dictionary, https://www.oed.com/dictionary/loss_n1?tab=meaning_and_use#38877144. Accordingly, the phrase "imminent loss" means "impending destruction or factual inability to keep something." *Golden Corral*, 559 F. Supp. 3d at 488 (citing definitions for "imminent" and "loss" from the Oxford English Dictionary).

The phrase "imminent loss" must be interpreted alongside the words surrounding it. *Dublin v. United States*, 599 U.S. 110, 124 (2023) ("[A] word is known by the company it keeps.") (quotation omitted). Here, the phrase "imminent" loss immediately follows "direct physical loss, damage or destruction," which implies that the imminent (i.e., impending) loss will be "physical" in nature. For example, the imminent loss language would apply when a government authority evacuates an insured property that is about to be impacted by a hurricane, but it would not apply when a government authority prohibits access to an insured property to repair a sidewalk near the property.

Interpreting "imminent loss" as impending physical loss is further supported by reading it alongside the Time Element Provision. *See Geary v. Life Invs. Ins. Co. of Am.*, 508 F. Supp. 2d 518, 522 (N.D. Tex. 2007) (Means, J.) ("[N]o word, phrase, sentence, or section should be construed in a vacuum; rather, the Court must consider each part of a policy in its proper context."). The Civil Authority Provision only provides coverage if Crow suffered a Time Element loss. And the Time Element Provision only provides coverage for physical loss. It states, "This Policy insures loss resulting from the necessary interruption or reduction of business operations conducted by the Insured and *caused by direct physical loss, damage or destruction, of the property*." Doc, 8-1, App'x, 21; Doc. 9-1, App'x, 37; Doc. 10-1, App'x, 31 (emphasis added). And because the Civil Authority

Provision applies to the Time Element Provision, it would be reasonable to infer that it, also, only covers physical loss.

Crow argues that "'imminent'. . . means that the physical damage has not yet happened" and asks what would happen if "the authorities shut down Crow's hotel because of an imminent hurricane." Doc. 15, Resp., 13. Crow argues that the Insurers' reading of the Civil Authority Provision would mean "the hurricane must actually hit the hotel and cause physical damage." *Id.* This is incorrect. The example posed by Crow is a perfect example of what the Civil Authority Provision covers. If a government evacuates the hotel because of an impending hurricane, then there is an imminent risk of physical loss, damage, or destruction. Accordingly, the Civil Authority Provision would apply *regardless* of whether the hurricane did in fact damage the hotel.

Crow argues that "[t]he presence of the disjunctive 'or' . . . supports the notion that the term 'imminent loss' must be viewed as a trigger of coverage independent from the separate direct physical loss trigger." Doc. 15, Resp., 10. The Court agrees that the term "or" creates two separate phrases, but the distinction is that one phrase covers *direct* physical loss, damage, or destruction and the other covers *imminent* physical loss, damage, or destruction. Thus, the Court concludes the Policies' Civil Authority Provisions only cover *physical* loss, which does not include loss from Covid-19 orders.

2.  The "Special Time Element" Provision Does Not Trigger Coverage Under the Policies' Civil Authority Provision.

The Special Time Element Provision cannot trigger coverage for a "peril insured" under the Civil Authority Provision. The Policies each have a Special Time Elemental Provision that provides coverage to address the loss of income due to the outbreak of infectious diseases:

> This policy is extended to cover the actual loss sustained by the Insured resulting from cancellation of or inability to accept bookings for accommodations and/or a cessation or diminution of trade due to a loss of potential customers, as a direct result

of: . . . b) The outbreak of a contagious and/or infectious disease, the discovery of which causes restrictions on the use of that location on the order of the competent local authority. . . In addition, this Policy excludes any loss directly or indirectly arising out of, contributed to, or by resulting from Severe Acute Respiratory Syndrome (SARS), Avian Flu, and or atypical pneumonia, or fear or threat thereof.

Doc. 8-1, App'x, 29; Doc. 9-1, App'x, 45; Doc. 10-1, App'x, 39.

The Special Time Element coverage has a specific sublimit of $5 million for Continental and Lloyd's and $25,000 for IUIC. Doc. 8-2, App'x, 10; Doc. 9-1, App'x, 21; Doc. 10-1, App'x, 15.[3]

Crow argues that the Special Time Element Coverage triggers protection under the Civil Authority Provision because Covid-19 caused restrictions on the use of the Properties, and this qualifies as a "peril insured" regardless of whether it caused physical damage. Doc. 15, Resp., 12. As the Court will explain below, this is incorrect for two reasons. First, the Policies' Special Time Element Provision is limited to specified causes of loss (e.g., contagious and/or infectious diseases) and has its own sublimit. Therefore, it cannot be applied to the Civil Authority Provision. Second, even if the Special Time Element Provision triggered the Civil Authority Provision, Crow would still need to allege that the peril insured (i.e., infectious diseases) caused imminent or direct physical loss, damage, or destruction to qualify for coverage under the Civil Authority Provision.

The Special Time Element Coverage cannot be applied to the Civil Authority Provision because it has its own specific causes of loss and sublimit. In a similar case in New York, the court found that the policy's contagious diseases coverage extension, which provided a $5 million sublimit, could not be used to provide coverage under other provisions because it would "render the . . . sublimit meaningless and violate[] basic rules of contract construction." *Century 21 Dep't Stores, LLC v. Starr Surplus Lines Ins. Co.*, 207 N.Y.S.3d 510, 512 (2024), *leave to appeal denied*, (N.Y. Sup. Ct. Apr.

---

[3] However, IUIC's policy included a General Amendatory Endorsement which deleted the Special Time Element in its entirety. Doc. 10-1, App'x, 91–92.

15, 2025). Crow argues that this case is "inapposite because their civil authority coverage was triggered only by 'physical loss or damage.'" Doc. 15, Resp., 13. But this argument misses the point. The court did find that the civil authority provision only applied to physical damage. *Century 21*, 207 N.Y.S.2d at 511. But it separately reasoned that the contagious diseases coverage extension could not trigger coverage under the civil authority provision, not because of the absence of physical damage, but because it would render the extension's sublimit "meaningless." *Id.* at 512.

Second, even if the Special Time Element applied to the Civil Authority Provision, it would not modify the requirement for showing imminent or direct physical loss to qualify for coverage under the Civil Authority Provision. In another case, a plaintiff argued that an infectious disease provision "modifie[d] the requirement for 'direct physical loss of or damage' to property in every provision of the Policy." *St. Tammany Par. Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*, 593 F. Supp. 3d 399, 417 (E.D. La. 2022). The court rejected this argument because such a reading would render the infectious disease provision "meaningless because the loss resulting from interruption by communicable disease would be covered under other provisions of the policy." *Id.* For similar reasons here, the Special Time Element would be rendered meaningless were infectious diseases covered by the Civil Authority Provision. Accordingly, the Special Time Element Provision cannot trigger coverage for a "peril insured" under the Civil Authority Provision.

### 3. Crow Cannot Allege Direct or Imminent Physical Loss from the Covid-19 Orders.

Crow cannot allege any direct or imminent physical loss, damage, or destruction from the Covid-19 stay-at-home orders.

Courts in Texas and across the country, analyzing almost identical policy language, have held that allegations or proof of the presence of COVID-19, the effect of civil orders, and the voluntary reduction of capacity or use of other protective measures

in response to the pandemic are all insufficient to establish 'direct physical loss or damage' to property.

*Univ. of Saint Thomas v. Am. Home Assurance Co.*, No. CV H-20-2809, 2021 WL 3129330, at *5 (S.D. Tex. July 23, 2021). And Crow does not allege or attempt to argue that the orders caused direct or imminent physical loss. *See generally* Doc. 15, Resp.; Doc. 1-C, Pet. "Absent a direct causal link between a civil order 'prohibiting access' and some kind of 'physical loss or damage,' there can be no Civil Authority coverage." *Mt. Hawley Ins. Co. v. Jamal & Kamal, Inc.*, 550 F. Supp. 3d 432, 439 (S.D. Tex. 2021) (quoting *S. Tex. Med. Clinics. P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008)). For this reason, the Court dismisses Crow's Breach of Contract for the Civil Authority Coverage against all Insurers.

**B.    *Crow Failed to State a Claim against IUIC for Breach of the Special Time Element Coverage.***

Crow failed to plausibly allege that IUIC breached the Special Time Element Provision. Doc. 1-C, Pet., ¶¶ 63–73. Crow alleges IUIC breached its Policy by denying Crow's claims under the Special Time Element's infectious disease coverage. *Id.* IUIC argues that Crow is not entitled to coverage under the Special Time Element Provision because the Policy's General Amendatory Endorsement deleted the Provision. Doc. 10, IUIC's Mot., 10–11; *see* Doc. 10-1, App'x, 92 ("Special Time Element is deleted in its entirety."). The Court agrees.

"[E]ndorsements to a policy generally supersede and control over conflicting printed terms within the main policy." *TIG Ins. Co. v. N. Am. Van Lines, Inc.*, 170 S.W.3d 264, 271 (Tex. App.– Dallas 2005, no pet.) (citation omitted); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558 (5th Cir. 2004) ("[A]dded provisions will supersede the previous policy terms to the extent they are truly in conflict." (citation omitted)). Here, the Declarations provide that IUIC will pay

$25,000 under the Special Time Element Provision, Doc. 10-1, App'x, 15, but the General Amendatory Endorsement deleted the Special Time Element Provision, *id.* at 92.

Crow argues that the language from the Declaration should control because it "is more specific and tailored to Crow." Doc. 15, Resp., 7. The Court disagrees. Crow cites a case to argue that when an insurance policy contains both specific and general provisions relating to the same thing, the specific provision controls. *Id.*; *Davis v. Tex. Life Ins. Co.*, 426 S.W.2d 260, 262 (Tex. App.—Waco 1968, writ ref'd n.r.e.). However, that case does provide that a more specific declaration can trump an endorsement. *See Davis*, 426 S.W.2d at 262. But in *Bituminous Casualty Corp. v. The Travelers Indemnity Co., et al.*, the endorsement deleted liability coverage for the plaintiff's vehicles. No. 3:12-CV-0935, 2013 WL 1722447, at *1 (N.D. Tex. Apr. 22, 2013) (Fitzwater, C.J.). The endorsement specified "LIABILITY COVERAGE IS DELETED," but the plaintiff argued that it was ambiguous because it did not specifically delete the portion of the policy's declaration page that applied to the plaintiff's vehicles. *Id.* at *5. The court was not persuaded. Because the "Endorsement unambiguously deleted liability coverage . . . the [plaintiff's vehicles] were not covered autos." *Id.* Here, too, even though the declarations page specifically provides coverage up to $25,000 under the Special Time Element, the endorsements page unambiguously deleted the Special Time Element "in its entirety." Doc. 10-1, App'x, 92. Thus, there is no ambiguity and the Court dismisses Crow's claim against IUIC for breach of the Special Time Element.

C.    *The Court Dismisses the Texas Insurance Code Claims.*

Crow brings claims against all three Insurers for violation of Chapters 541 and 542 of the Texas Insurance Code. Doc. 1-C, Pet., ¶¶ 85–98. These insurance claims are only viable if Crow's other claims are viable. These claims fail because they are based on the premise that the Insurers

wrongfully denied coverage to Crow. "The general rule is that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy." *Martin Res. Mgmt. Corp. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *5 (5th Cir. Sept. 20, 2021). Because Crow fails to allege it is "entitled to policy benefits, it fails to plausibly allege a claim for violations of the Texas Insurance Code." *Id.* Accordingly, the Court dismisses the claims for violations of the Texas Insurance code with prejudice.

D.    *The Court Does Not Grant Leave to Amend.*

The Court **DISMISSES** all claims **WITH PREJUDICE**. A plaintiff's failure to plead a claim should not automatically result in dismissal with prejudice. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). However, a court may dismiss a claim with prejudice if the pleading defect is incurable or if the plaintiff has had other opportunities to amend his complaint. *Id.* Here, the pleading defects are incurable because the Policies preclude Crow from collecting the damages it seeks to recover. *See Martin Res. Mgmt. Corp.*, 2021 WL 4269565, at *1 (affirming dismissal with prejudice when the insured did not establish "coverage under the terms of the policy"). Therefore, the Court denies leave to amend.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions (Docs. 8, 9, 10) and **DISMISSES** Crow's Complaint **WITH PREJUDICE**. A final judgment will follow.

SO ORDERED.

SIGNED: May 12, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE